762 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
LUXURY BLANKETS, INC.; BENJAMIN RUPERT; ELAINE RUPERT,
DEFENDANTS-APPELLANTS.
 NO. 84-3519
 United States Court of Appeals, Sixth Circuit.
 4/23/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: KEITH and JONES, Circuit Judges; and DIGGS TAYLOR, District Judge.*
 Per Curiam.
 
 
 1
 Appellants, Luxury Blankets, Inc. (Luxury), Elaine Rupert, and Luxury's President, Benjamin Rupert, appeal from the judgment of the district court in a foreclosure action filed under 28 U.S.C. Sec. 1345. This appeal presents issues regarding the affirmative defense of illegality and a statement concerning conspiracy. We affirm.
 
 
 2
 When Luxury sought to expand its business, Benjamin Rupert asked Home Banking Company (HBC), which had financed much of Luxury's business, to make a loan of $260,000. It appears, however, that either HBC had reached or had exceeded its lending limit to Luxury. Consequently, HBC's president, Norman Kuhlman, approached Albert Mazza, a Small Business Administration representative, to secure the SBA's commitment to participate in a loan to Luxury pursuant to Section 502 of the Small Business Investment Act, 15 U.S.C. Sec. 696.
 
 
 3
 Afterwards, the SBA guaranteed a loan to Luxury from HBC and Community Improvement Corporation (CIC), a development corporation whose president was Kuhlman. The SBA's loan authorization allowed the disbursement of a $220,000 loan to Luxury only after CIC gave Luxury $40,000 in the form of an equity capital injection.
 
 
 4
 CIC did not give Luxury the $40,000. Instead, Kuhlman executed a $220,000 promissory note on behalf of CIC in favor of HBC. Next, Banjamin and Elaine Rupert gave CIC a $260,000 mortgage note secured by a mortgage deed; however, the reverse side of the note indicated that CIC forgave and considered liquidated $40,000 of the principal. Then, CIC assigned its interest in the mortgage note and deed to HBC. Subsequently, Benjamin, Elaine, and Mauralle Rupert unconditionally guaranteed payment of the assigned note and CIC filed financing statements regarding some of Luxury's machinery and equipment. Afterwards, the $220,000 loan was disbursed.
 
 
 5
 Thus, it appears that Mazza and Kuhlman created a paper charade. The charade, details of which were unknown to Benjamin Rupert, was designed to account for the nonexistent but required $40,000 capital injection. The charade was also designed to ensure that Kuhlman would not violate bank policy by exceeding HBC's lending limit to Luxury; apparently HBC's limits did not apply to loans made after the SBA had given its guarantee. The charade was further designed to be a favor from Mazza to Kuhlman. In exchange for that favor, Kuhlman helped Mazza, against whom a Pittsburgh bank held an unsatisfied judgment, get an HBC loan; that loan's closing date closely parallels Luxury's loan.
 
 
 6
 The SBA investigated Luxury's loan and discovered that CIC failed to make its capital injection. An investigator noted that the charade was a 'bail out' for HBC's over exposure in loans to Luxury. SBA's district counsel ascertained that despite the charade CIC generally complied with the loan requirements. An SBA director concluded that HBC made the capital injection in fact, that Mazza and CIC did not create a conspiracy, and that CIC contributed enough to comply with 13 C.F.R. Sec. 108.502-1(e).
 
 
 7
 Thereafter, Luxury defaulted on its payments due under the loan. The SBA honored its guarantee and purchased the loan. During state court litigation HBC, Luxury, Benjamin Rupert, and others executed a general release.
 
 
 8
 The SBA sued Luxury and the Ruperts to foreclose on the mortgage, to secure equipment, and to secure a judgment against the Ruperts based upon their unconditional guarantees. Luxury filed a third-party complaint against the SBA Administrator and sought a $260,000 judgment as damages for its noncompliance with federal regulations and for breach of duty. The district court entered judgment for the Government against Luxury and the Ruperts, jointly and severally, in a sum of $335,245.11 with interest.
 
 
 9
 On appeal this Court may freely review the district court's legal conclusions, ultimate findings of fact, and mixed questions of fact and law. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 143 n.19 (6th Cir. 1983). We apply that standard to determine whether the district court erred in concluding that appellants failed to establish their affirmative defense of illegality.
 
 Illegal Contract
 
 10
 The district court was convinced that appellants failed to establish the affirmative defense of illegality. On appeal appellants contend that unrefuted evidence established Mazza's and Kuhlman's conspiracy and fraudulent conduct. Appellants' brief lists in detail the findings of fact, testimony, and exhibits used to support that contention.
 
 
 11
 The Government contends that the loan contract was legal. In support, the Government advances two reasons. First, neither paragraph four of the statute governing the SBA's 502 loan program nor 13 C.F.R. Sec. 108.502-1, the regulation used to implement the 502 loan program, requires the participation of a development company. Second, the loan was not a 'bailout' for HBC because the facts do not show that HBC was inadequately secured or in a position to sustain a loss.
 
 
 12
 We believe the Government is correct that neither the statute nor the regulations require a capital injection. Instead both the statute and the regulations make permissive a capital injection by a development corporation. The SBA's loan authorization in the instant case, however, makes mandatory CIC's $40,000 capital injection prior to disbursal of the $220,000.
 
 
 13
 Appellants are correct that the contract is illegal. According to the Restatement (Second) of Contracts, a contract is illegal 'if either its formation or performance is criminal, tortious, or otherwise opposed to public policy.' Restatement (Second) of Contracts Sec. 512. One economic policy underlying the statute governing SBA's 502 loan program is that small business concerns accomplish their objectives either through the SBA loan or through the SBA loan in combination with a capital injection from a development corporation. Accord 13 C.F.R. Sec. 108.502-1(e). Here, that economic policy was frustrated in the formation of the loan contract since Mazza, Kuhlman, HBC, and CIC knew that CIC was not going to contribute the $40,000 required by SBA's loan authorization. The loan contract, therefore, fit the Restatement's definition of an illegal contract. Consequently, the district court erred in finding that appellants failed to establish their affirmative defense of illegality.
 
 
 14
 Despite that error, the illegal loan contract must be enforced. As the district court noted the illegality of a contract does not automatically render its unenforceable. California Pacific Bank v. Small Business Administration, 557 F.2d 218 (9th Cir. 1977). Instead illegal contracts are unenforceable only 'where (1) a statute explicitly provides that contracts contravening it are void or (2) where 'the interest in [the contract's] enforcement is clearly outwei hed in the circumstances by a public policy against the enforcement of such terms.' Id. at 224 (quoting Restatement (Second) of Contracts Sec. 320(1) at 53 (Tent. Draft No. 12, March 1, 1977)). We, like the district court, have not discovered any statute or regulation indicating that CIC's failure to make the capital injection renders the underlying obligation void. Moreover, we believe that the economic policy of ensuring the joint participation of the SBA and a development corporation does not clearly outweigh the interest in contract enforcement when the public fisc, the parties' expectations, and unjust enrichment are at stake. Additionally, the evidence clearly shows that appellants intended to and received $220,000 of financial assistance. It is clear that they intended to be responsible for it. To allow appellants to escape liability would result in their unjust reception of $220,000.
 
 Conspiracy Statement
 
 15
 The district court said that an SBA director 'concluded that there was no reason to believe that there was a conspiracy between the CIC and Mr. Mazza.' Appellants contend that the district court erred in holding that the SBA did not abuse its discretion in determining that there was 'no reason to believe there was a conspiracy.' Appellants' contention is erroneous because it characterizes the district court's language as a holding when, in fact, the language merely repeated the SBA director's conclusions. It is obvious that the repetition did not state or imply a legal principle.
 
 
 16
 We, therefore, AFFIRM the district court's judgment.
 
 
 
 *
 Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting be designation